## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

JEREMY HALCOMB

        Plaintiff,

v.                                    Case No. 2:23-CV-639

ASCENSION HEALTH MINISTRY, INC.,
ASCENSION HEALTH, INC.,
ASCENSION WISCONSIN,
ASCENSION NE WISCONSIN, INC.
COLUMBIA ST. MARY'S, INC.
COLUMBIA ST. MARY'S HOSPITAL
MILWAUKEE, INC.
COLUMBIA ST. MARY'S HOSPITAL
OZAUKEE, INC.
        Defendants.

## VERIFIED COMPLAINT

Plaintiff Jeremy Halcomb ("Plaintiff"), by and through his undersigned counsel, brings this Verified Complaint against the Defendants, Ascension Health Ministry, Inc., Ascension Health, Inc., Ascension Wisconsin, Ascension NE Wisconsin Inc., Columbia St. Mary's, Inc., Columbia St. Mary's Hospital Milwaukee, Inc., and Columbia St. Mary's Hospital Ozaukee, Inc, (collectively "Defendants"). In support, Plaintiff alleges as follows:

### INTRODUCTION

1.      This action is based on violations of Title VII of the Civil Rights Act of 1964 (Pub. L. 88-352), codified at 42 U.S.C. § 2000e *et seq*. The gravamen of this Complaint is that Defendants unlawfully refused to accommodate, otherwise discriminated against, and

1

subsequently terminated Plaintiff on the basis of an unlawful denial of a religious exemption from Defendants' policy of mandatory vaccination from the coronavirus, officially named severe acute respiratory syndrome coronavirus 2, SARS-CoV-2 ("COVID-19"). Defendants knew or should have reasonably known that Plaintiff holds religious beliefs that prohibit COVID-19 vaccination because he asserted them. Defendants nevertheless failed to provide an interactive process to ascertain his beliefs and entertain possible accommodations. Instead, Defendants denied Plaintiff a religious exemption and terminated him. Approximately five weeks into the unpaid suspension, Defendants began asking unvaccinated suspended employees to return to work without requiring any unique infection mitigation protocol than vaccinated employees, demonstrating that accommodating Plaintiff's religious practice would not pose an undue hardship and the termination was unwarranted.

## JURISDICTION AND VENUE

2. This Court has authority over this action pursuant to 28 U.S.C. § 1331, in federal questions raised under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. ("Title VII"). Venue is proper in the Eastern District of Wisconsin under 42 U.S.C. § 2000e-5(f)(3), in that all Defendants maintain significant operations within the Eastern District. This case is appropriate for the assignment in the Milwaukee Division as the principal offices of Defendants Ascension Wisconsin, Columbia St. Mary's, Inc., Columbia St. Mary's Milwaukee, Inc., and Columbia St. Mary's Ozaukee, Inc. is in this district. Furthermore, this matter is related to other cases assigned to the Milwaukee Division of the Eastern District of Wisconsin: *Reilly v Ascension Health Inc. et al*, 2:22-cv-01168-BHL; *Schultz et al v Ascension Health, Inc. et al*, 2:22-cv-01562-BHL; *Bayer v Ascension Health, Inc. et al*, 1:23-cv-7-BHL; and *Johnson and Prahl v. Ascension Health, Inc. et al*, 2:23-cv-00051- BHL; *Lindstrom v Ascension Health, Inc.*,

2

et al, 2:23-cv-212-BHL; *Allen v. Ascension Health, Inc. et al*, 2:23-cv-213-BHL; *Sutyla v. Ascension Health, Inc. et al*, 2:23-cv-549-BHL; and *Zajicek et al v. Ascension Health, Inc. et al*, 2:23-cv-13.

**PARTIES**

3.      Plaintiff Jeremy Halcomb devoted his career to service to others through healthcare administration. He has a strong background in healthcare administration with roughly 15 years of experience. Plaintiff is a devout Christian who makes moral and ethical decisions through guidance he finds from the Holy Spirit. Plaintiff's religious beliefs and practices prohibit him from receiving COVID-19 vaccination.

4.      Upon information and belief Ascension Health Ministry, Inc. is part of the national Ascension network and is located in Indianapolis, Indiana. Ascension Health Ministry, Inc. is an "employer" within the meaning of 42 U.S.C. § 2000e.

5.      Upon information and belief, Defendant Ascension Health, Inc. ("Ascension") is the nation's second largest national health system that operates more than 2,600 sites of care in 19 states and the District of Columbia, while providing a variety of services including clinical and network services, venture capital investing, investment management, biomedical engineering, facilities management, risk management, and contracting through Ascension's own group purchasing organization. The principal office for Ascension Health, Inc. is 4600 Edmundson Road, St. Louis, Missouri 63134. Ascension is an "employer" within the meaning of 42 U.S.C. § 2000e.

6.      Upon information and belief, Defendant Ascension Wisconsin, is a healthcare provider with a principal place of business at 400 West Riverwoods Parkway, Glendale,

Wisconsin, 53212. Ascension Wisconsin is an "employer" within the meaning of 42 U.S.C. § 2000e.

7.     Upon information and belief, Defendant Ascension NE Wisconsin, Inc. is a healthcare provider established in Outagamie County with a principal place of business at 400 West Riverwoods Parkway, Glendale, Wisconsin, 53212. Ascension NE Wisconsin, Inc. is an "employer" within the meaning of 42 U.S.C. § 2000e.

8.     Upon information and belief Defendant Columbia St. Mary's is a regional healthcare network that is sponsored by the national Ascension network and is comprised of four hospitals and over 60 community clinics with a principal place of business at 2310 North Lake Drive, Milwaukee, Wisconsin 53211. Defendant Columbia St. Mary's, Inc. is an "employer" within the meaning of 42 U.S.C. § 2000e.

9.     Upon information and belief, Defendant Columbia St. Mary's Hospital Milwaukee, Inc. is a hospital that delivers specialty and 24/7 emergency care with a principal place of business at 2301 North Lake Drive, Milwaukee, Wisconsin 53211. Defendant Columbia St. Mary's Hospital Milwaukee, Inc. is an "employer" within the meaning of 42 U.S.C. § 2000e.

10.     Upon information and belief, Defendant Columbia St. Mary's Hospital Ozaukee, Inc. is a hospital that delivers specialty and 24/7 emergency care with a principal place of business at 13111 North Port Washington Road, Mequon, Wisconsin 53097. Defendant Columbia St. Mary's Hospital Ozaukee, Inc. is an "employer" within the meaning of 42 U.S.C. § 2000e.

**FACTUAL BACKGROUND**

11.     Defendants hired Plaintiff in 2019 as a Senior Advisor of Business Development, a leadership role within the Ascension organization.

4

12. Plaintiff provided exemplary service to Defendants throughout his employment. He consistently received stellar reviews from higher leadership during employment performance check-ins.

13. Plaintiff's exemplary service continued throughout the COVID-19 Pandemic when administrative operations transitioned to remote, home office work after the corporate office where Plaintiff traditionally worked was vacated.

14. On September 20, 2020, the Leader Comment on Plaintiff's Performance Check-in stated "Jeremy has done an outstanding job flexing with all the various needs of our Division. He never fails to deliver and does a thorough job of every project he is responsible with a positive attitude and creative approach."

15. On March 31, 2021, the Leader Comment on Plaintiff's Performance Check-in stated "Jeremy is a major team player, supports his staff and the organization in every possible way. He is open to feedback and is also willing to give his opinions and offer solutions to each challenge we come up against. Jeremy is an invaluable part of my leadership and the Ascension team in general!"

16. On June 24, 2021, the Leader Comment on Plaintiff's Performance Check-in stated "Jeremy continues to go above and beyond in his role. He is not only running Operations top to bottom, but has key insights into overall strategy for our division, has taken on the heaviest burdens in the Aspirus transition and is an outstanding team player."

17. Plaintiff is a devout Christian who holds sincerely held religious beliefs of sanctity of conscience and bodily integrity.

18. As a Christian, Plaintiff believes his "conscience is guided and convicted by the Holy Spirit." *See* **Exhibit 1**, *Plaintiffs Request for Religious Exemption*.

5

19.     Plaintiff holds sincere religious beliefs of bodily integrity. Because he believes his body is a gift from God, Plaintiff practices "good stewardship" of his body. For instance, Plaintiff abstains from alcohol, body piercings, and tattoos. *Id*.

20.     On or about August 4, 2021, Ascension announced a mandatory vaccination policy for COVID-19. As part of its policy, Ascension purported to provide employees with the opportunity to seek religious or medical exemptions from the vaccine, with the compliance deadline of November 12, 2021.

21.     Plaintiff's Christian beliefs of sanctity of conscience and bodily integrity prohibit him from receiving COVID-19 vaccination as he believes he is guided by the Holy Spirit to be a good steward of his divinely given body. Plaintiff believes receiving an injection of COVID-19 vaccination would be an assault to his bodily temple and therefore sinful. *Id*.

22.     On August 19, 2021, Joseph R. Impicciche, President and Chief Executive Officer of Ascension, sent an email to all Ascension employees, Catholic or not, entitled "Pope Francis: COVID-19 vaccination an 'act of love' and 'moral obligation'". Mr. Impicciche's email asserted there is a moral obligation to be injected with COVID-19 vaccines.

23.     In order to submit a request for a religious exemption from the mandatory vaccination policy, Defendants required employees to use an online religious exemption request forms with drop down answers. The deadline for submitting an online religious exemption request from COVID-19 vaccination was October 1, 2021.

24.     In order to submit the online religious exemption request form, employees were required to answer questions about their religious affiliation, their religious beliefs, and how the vaccine violated their moral conscience.

25.      Before completing the online religious exemption request form, employees were required to watch a video entitled "COVID-19 Myths and Facts."

26.      Employees were also required to check "I agree" to a statement which claimed assent to "voluntary resignation" for noncompliance of becoming "fully vaccinated" by November 12, 2021, if the request for religious exemption from vaccination was denied.

27.      Plaintiff timely submitted a completed online form for a religious accommodation from COVID-19 vaccination, detailing his sincerely held Christian beliefs of sanctity of conscience and bodily integrity. *Id*.

28.      Shortly after submitting his request for religious accommodation, Plaintiff received automated email replies from Ascension's Service Desk ("Service Desk") acknowledging the submissions of his request for religious accommodation from COVID-19 vaccination. It is uncertain where the Service Desk is located in the national Ascension network and who serves on the Exemption Review Committee.

29.      On October 11, 2021, Plaintiff received an automated email from the Service Desk denying his request for religious accommodation from COVID-19 vaccination.

30.      On November 4, 2021, David Noshay, Vice President of the Ascension Employer Solutions Division and Plaintiff's manager, sent a directive email message to Plaintiff and others that included the Ascension COVID Vaccine Leader Guidebook ("Guidebook") explaining "what to do with employees" who were not compliant with Ascension's COVID-19 vaccine mandate.

31.      The Guidebook included a termination timeline for "non-compliant" employees that began with unpaid suspension on November 13, 2021, system disablement for suspended employees on November 18, 2021, and a "Before termination" period of November 19, 2021, to

January 4, 2022. Defendant's effective termination date for COVID-19 "non-compliant" employees was initially designated as January 5, 2022.

32.     In his email message, Mr. Noshay explained "If you know for fact that an employee will not get the vaccine, we are still supposed to encourage them to formally resign if they are willing."

33.     Plaintiff was aware that the denials of religious accommodation requests was extensive, causing financial despair for numerous employees who faced unpaid suspension on November 12, 2021, and ultimate termination on January 5, 2022.

34.     Plaintiff recognized the quickly pending termination timeline for an abundant number of Defendants' employees, and therefore, as a matter of goodwill, sent an email to roughly 50 to 100 individuals within the Ascension network on November 4, 2021, stating:

> I am going to be suspended this Friday, Nov 12 and will be terminated Dec. 2 due to my non-compliance with Ascension's COVID vaccine mandate. My understanding is that you may be in the same situation as I am. I'm reaching out because I am working on a partnership with a local staffing agency to place impacted individuals with healthcare organizations that will grant exemptions. Or at some point my hope is that these mandates will be struck down through the courts or rescinded by healthcare systems simply because they will be unsustainable due to their impact on staffing levels (especially considering their failing efficacy). If you have any interest in working with me, please respond to this email and provide me your personal contact information. A copy of your resume/CV would be great too. I'll follow up with you from there so we can talk in more detail about your personal situation and what you would be looking for in a job situation. If you want to get in contact with me after this Friday, my personal email is Halcomb511@outlook.com and my cell is 262-347-5815.

35.     On November 10, 2021, Karen Kozlowski, Associate Relations Specialist of Human Resources, conducted a phone conference with Plaintiff and Mr. Noshay regarding Plaintiff's email offering assistance to "non-compliant" COVID-19 unvaccinated employees facing termination. Ms. Kozlowski centered the phone conference on Defendants' Solicitation

8

and Distribution Policy that does not prohibit emails offering employment assistance to individuals facing termination.

36.     Although Ms. Kozlowski recognized that Plaintiff did not act malevolently, she nonetheless discussed potential action for Plaintiff's goodwill email.

37.     In response to Plaintiff's goodwill email offering to assist employees facing unpaid suspensions with ultimate termination, Defendants simply issued a "coaching statement" on Plaintiff's exemplary employment record.

38.     On November 12, 2021, at 8:18 AM, Mr. Noshay sent Plaintiff an email explaining to Plaintiff pending unpaid suspension actions for his "COVID mandate non-compliance." Mr. Noshay requested from Plaintiff the return of his badge, keys, and computers on November 18, 2021, the day Plaintiff's system access would be terminated in accordance with the Guidebook timeline. Ms. Koslowski was copied on the email.

39.     Within five weeks of the unpaid suspension start date, Defendants began requesting most suspended COVID-19 unvaccinated staff to return to work without requiring any protocol beyond that of vaccinated staff, demonstrating the unpaid suspension and threat of termination was unwarranted.

40.     Defendants did not call Plaintiff to return to work.

41.     On January 17, 2022, Plaintiff emailed Ms. Koslowski inquiring about his employment status and exact termination date, stating "When I was suspended on Nov 12, the last communication I received from Ascension was that I would be terminated Jan 5."

42.     Ms. Koslowski responded on January 18, 2022, claiming "[i]t appears there was an error with your termination date. I'm working with HR Delivery department – Nicki Carey, specifically. Nicki has requested that your termination date be changed to an effective date of

1/22/22, which is the termination effective date recently identified for Covid vaccine non-compliance."

43.     Within four days, Plaintiff was terminated.

44.     As a result of the unpaid suspension and ultimate termination, Plaintiff suffered damages, including financial losses.

45.     Plaintiff filed a religious discrimination claim with the Equal Rights Division of the Wisconsin Department of Workforce Development on or about September 13, 2022.

46.     Plaintiff holds a Right to Sue Notice from the U.S. Equal Employment Opportunity Commission (EEOC). **Exhibit 2**, *Plaintiff's Right to Sue Notice*.

## FIRST CAUSE OF ACTION

**Violation of Title VII of the Civil Rights Act of 1964 [42 U.S.C. § 2000e *et seq*.] Adverse Employment Action based on Religion Against Defendants**

47.     Plaintiff hereby realleges and incorporates by reference the preceding paragraphs as though fully set forth herein.

48.     Pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1), it is an unlawful employment practice for an employer: (1) to fail or refuse to hire or to discharge any individual, or otherwise discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

10

49.     Plaintiff was at all relevant times an employee and an applicant covered by 42 U.S.C. §2000e, et seq., prohibiting discrimination in employment based on religion. Defendants were at all relevant times employers for purposes of 42 U.S.C. § 200e, *et seq*.

50.     Plaintiff holds sincere religious objections to receiving COVID-19 vaccination.

51.     Although Plaintiff informed Defendants of his faith and practices, Defendants disregarded Plaintiff's sincere religious beliefs that conflict with receiving the COVID-19 vaccine.

52.     Defendants refused to converse or interact with Plaintiff regarding his faith to further understand his beliefs and religious practices.

53.     Plaintiff's religious accommodation request was denied without Defendants exploring any alternatives that might have been available to accommodate his religious beliefs.

54.     Plaintiff's religious beliefs and practices were therefore a motivating factor in placing him on unpaid suspension and ultimate termination.

55.     Plaintiff suffered significant damages because of Defendants' unlawful discriminatory actions, including emotional distress, lost wages and benefits, and the costs of bringing this action.

56.     Defendants intentionally violated Plaintiff' rights under Title VII.

57.     Plaintiff is entitled to lost wages, backpay, compensatory damages, punitive damages, nominal damages, attorneys' fees, costs of suit, a declaration that Defendants violated his rights under Title VII, and an injunction preventing Defendants from enforcing their discriminatory policies.

58.     Plaintiff is entitled to further relief as set forth below in his Prayer for Relief.

## SECOND CAUSE OF ACTION

11

**Violation of Title VII of the Civil Rights Act of 1964 [42 U.S.C. § 2000e *et seq.*]**
**Failure to Provide Religious Accommodation Against Defendants**

59.     Plaintiff hereby realleges and incorporates by reference the preceding paragraphs as though fully set forth herein.

60.     Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, makes it unlawful employment practice to fail or refuse to accommodate the religious beliefs and practices of an employee or prospective employee.

61.     Plaintiff suffered significant damages because of Defendants' unlawful discriminatory actions, including emotional distress, lost wages and benefits, and the costs of bringing this action.

62.     Plaintiff is entitled to lost wages, backpay, compensatory damages, punitive damages, nominal damages, attorneys' fees, costs of suit, a declaration that Defendants violated his rights under Title VII, and an injunction preventing Defendants from enforcing their discriminatory policies.

63.     Plaintiff is entitled to further relief as set forth in his Prayer for Relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays this Court grants relief as follows:

A.     Award Plaintiff backpay, including past loss wages and benefits, plus interest;

B.     Award Plaintiff other and further compensatory damages in an amount according to proof;

C.     Award Plaintiff noneconomic damages, including but not limited to damages for emotional distress and pain and suffering;

D.     Award Plaintiff reasonable attorneys' fees and costs of suit.

E.      Award Plaintiff punitive damages;

F.      Award Plaintiff nominal damages;

G.      Enjoin Defendants from enforcing their discriminatory policies;

H.      Declare that Defendants have violated Title VII of the Civil Rights Act; and

I.      Grant Plaintiff such additional or alternative relief as the Court deems just and proper.


Dated: May 19, 2023                          /s/ Carol Lee Ferrero
                                             Carol Lee Ferrero
                                             PACIFIC JUSTICE INSTITUTE
                                             9714 North Valley Hill Drive
                                             Mequon, Wisconsin 53092
                                             Phone: 262-227-7203
                                             cferrero@pji.org

                                             *Attorney for Plaintiff*